UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAN LAN WANG; PRINCIPAL
CONNECTIONS, LTD., d/b/a MLX.com,

                Plaintiffs,

-v-                                            No. 07 Civ. 2032 (LTS)(AJP)

DAVID PATERSON, in his official capacity as
Governor of the State of New York; LORRAINE
CORTES-VAZQUEZ, in her official capacity as
Secretary of State of the State of New York; THE
STATE OF NEW YORK; RANDY DANIELS,
individually and as former Secretary of State of
the State of New York; FRANK MILANO,
individually and as former Secretary of State of
the State of New York; BRUCE STUART,
individually and as former employee of the
Department of State of the State of New York;
WHITNEY CLARK, individually and as employee
of the Department of State of the State of New
York,

                Defendants.

OPINION AND ORDER

APPEARANCES:

| | |
|---|---|
| ALLYN & FORTUNA LLP | ANDREW M. CUOMO |
| Nicholas Fortuna, Esq. | Attorney General for the State of New York |
| 200 Madison Avenue, 5th Floor | 120 Broadway, 24th Floor |
| New York, New York 10016 | New York, New York 10271 |
| - and - | By: Lewis Polishook |
| | Assistant Attorney General |
| LAW OFFICES OF EMILY BASS | *Attorney for Defendants* |
| Emily M. Bass, Esq. | |
| 25 Washington Street, Suite 305 | |
| Brooklyn, New York 11201 | |
| *Attorneys for Plaintiffs* | |

LAURA TAYLOR SWAIN, United States District Judge

Plaintiffs Lan Lan Wang and Principal Connections, Ltd. ("PCL"), a New York corporation doing business as MLX.com and founded by Ms. Wang to provide real estate marketing and brokerage services, brought suit against New York State and six current or former state officials[1] asserting claims and seeking damages based upon 42 U.S.C. § 1983 and various New York state law causes of action. The Court has federal question jurisdiction of Plaintiffs' § 1983 claims and supplemental jurisdiction of Plaintiffs' state law claims.[2]  28 U.S.C.A. §§ 1331, 1367 (West 2006).

The case is now before the Court on Defendants' motion pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the amended complaint ("Am. Compl."). Defendants New York State and all persons named in their official capacity seek dismissal on the grounds that the Eleventh Amendment renders them immune to Plaintiffs' claims. Defendants also move for dismissal with respect to all of the other claims on the grounds of the affirmative defense of release, asserting that a Stipulation of Settlement previously entered into by Plaintiffs precludes their claims in the instant case. The Court has carefully considered all of the parties' submissions. For the following reasons, the Court grants Defendants' motion in its entirety.

BACKGROUND

This case arises out of a long-running dispute between Plaintiffs and the Department of State of the State of New York ("DOS"), and its officials and employees, regarding Plaintiffs' real estate broker's license ("REB license") and Apartment Information Vendor license ("AIV license"),

---

[1]   The caption is hereby amended to reflect the names of the current occupants of offices whose holders are sued only in their official capacities. See Fed. R. Civ. P. 25.

[2]   See "Sovereign Immunity and the Eleventh Amendment," *infra,* for a discussion of the limitations of the Court's jurisdictional authority with respect to those defendants shielded by Eleventh Amendment sovereign immunity.

or lack thereof.[3]  Plaintiff PCL provides real estate marketing and brokerage services to property renters and buyers in New York City through both traditional brokerage services and an online electronic bulletin board.  (Am. Compl. ¶¶ 22-25.)  New York's Apartment Information Vendor Law ("AIV law") defines the business of an "apartment information vendor" and requires any person or corporation to acquire an AIV license from DOS before engaging in that business.  N.Y. Real Prop. Law § 446a-b (McKinney 2006).  Similarly, New York law requires a real estate broker, as defined by statute, to obtain an REB license, and allows DOS to revoke the REB license of any licensee that has "demonstrated untrustworthiness or incompetency."  N.Y. Real Prop. Law §§ 440-441 (McKinney 2006).  Plaintiffs obtained an REB license but did not obtain an AIV license for PCL, on the belief that PCL did not fall under the AIV law.  (Am. Compl. ¶ 27.)

On January 31, 2000, New York State Administrative Law Judge Roger Schneier suspended Plaintiffs' REB license on the grounds that Wang's operation of PCL constituted the unlawful operation of an Apartment Information Vendor business without the requisite license, thereby demonstrating "untrustworthiness and incompetence as a real estate broker."  (Am. Compl. ¶ 64.)  A protracted series of state administrative proceedings and federal court litigation ensued, including a lawsuit initiated by Plaintiffs in this court in December 2000 in which Plaintiffs challenged the constitutionality of the AIV law ("Wang I").  (Am. Compl. ¶¶ 48-129.)

In Wang I, Plaintiffs named as defendants, in their official capacities, the Governor of

---

[3]     The Amended Complaint variously suggests that the REB license was Wang's individually (e.g. Am. Compl. ¶ 6 ("Wang's [REB] license")) and that it was Plaintiffs' license jointly (e.g. Am. Compl. ¶ 7 ("Plaintiffs' REB license")). Similar confusion surrounds the discussion of the application for the AIV license (Am. Compl. ¶ 102).  In this Opinion and Order, the Court will refer to the REB license as Plaintiffs' REB license and the application for the AIV license as Plaintiffs' application.  Such references do not constitute factual findings or legal conclusions of any sort.

New York (as to whom all claims were subsequently dismissed in October 2001) and the Attorney General of New York.  In November 2004, Plaintiffs amended their complaint to add as a defendant Randy Daniels, Secretary of State of New York, and to allege additional constitutional violations.  The court subsequently dismissed four of Plaintiffs' five causes of action and all claims against the Attorney General.  Wang v. Pataki, 396 F. Supp. 2d 446 (S.D.N.Y. 2005).  Familiarity with that proceeding is assumed.

In June 2006, Plaintiffs and DOS entered into a Stipulation and Order of Settlement and Discontinuance ("Stipulation") in Wang I.  The Stipulation recited the procedural history of Wang I, which involved the same time period, actors, and basic disputes as those involved in the litigation now before the Court.[4]  (Polishook Decl., Exh. C, pp. 1-4.)  In the Stipulation, DOS pledged to issue Wang an REB license and to withdraw any opposition to her application for an AIV license, in exchange for which Plaintiffs agreed to "release and discharge [defendant] and any of [its] current, former, or future officials, officers, employees, heirs, devisees, agents . . . and the State of New York and/or its agencies from any and all claims, liabilities, causes of action, or defenses that any party asserted, or could have asserted, in this action." (Polishook Decl., Exh. C, ¶ 11.)  The court so-ordered the Stipulation on June 30, 2006, concluding Wang I.  Although no material factual developments related to Plaintiffs' dispute with DOS subsequently transpired, Plaintiffs initiated the instant case on March 9, 2007.

---

[4]  Plaintiffs seek to distinguish Wang I from the instant case on the grounds that Wang I concerned the constitutionality of the AIV law and the instant case concerns retaliation by Defendants against Plaintiffs for their initiation of Wang I and their opposition to Defendants' policies and practices (Pl. Opp. at 4).  However, all of the material retaliatory acts alleged in the Amended Complaint – the suspension of Plaintiffs' REB license; the denial of Plaintiffs' application for an AIV license; and the refusal to reinstate Plaintiffs' REB license (Am. Compl. ¶ 52) – are recited in the Stipulation.

DISCUSSION

Sovereign Immunity and the Eleventh Amendment

The Court must address the parties' sovereign immunity arguments before turning to the question of release. See Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n, 896 F.2d 674, 678 (2d Cir. 1990). The Eleventh Amendment to the Constitution of the United States provides that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. As explained below, Eleventh Amendment sovereign immunity precludes all of Plaintiffs' claims, with the exception of the claims asserted against state officials in their individual capacities.

Plaintiffs' amended complaint names as defendants the State of New York; the Governor of New York, in his official capacity; the DOS Secretary, in her official capacity; two former DOS Secretaries (Randy Daniels and Frank Milano) in their individual capacities; and one current and one former DOS employee (Bruce Stuart and Whitney Clark, respectively), in their individual capacities.[5] The Amended Complaint seeks only money damages. Defendants correctly argue that Plaintiffs' claims alleging violations of their federal civil rights under 42 U.S.C. § 1983 can be asserted only against officials in their individual capacities because States and their officials, when acting in their official capacities, are not "persons" subject to liability under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Accordingly, the Eleventh Amendment sovereign immunity of States and of their officials, when acting in their official capacities, has not

---

[5]   Although Plaintiffs' caption identifies these last four people as sued in their individual and "former" official capacities, paragraphs 17-21 of the Amended Complaint make clear that Plaintiffs intend to sue them only in their individual capacities.

been abrogated by § 1983, and they enjoy immunity from suits seeking money damages.  Id.
Plaintiffs' state law claims against Defendants in their official capacities are also barred by the
Eleventh Amendment, which prohibits federal courts from exercising supplemental jurisdiction to
adjudicate state law claims against state officers when acting in their official capacities.  Pennhurst
State School & Hosp. v. Halderman, 465 U.S. 89, 121 (1981); Bad Frog Brewery, Inc. v. New York
State Liquor Auth., 134 F.3d 87, 102 (2d Cir. 1998).

Plaintiffs do not contest these principles but, rather, claim that the State has waived
its sovereign immunity and thus cannot invoke the Eleventh Amendment as a defense in this case. 
A State can waive its sovereign immunity in certain instances, see Atascadero State Hosp. v.
Scanlon, 473 U.S. 234, 241 (1985), and Plaintiffs have advanced three theories of waiver here. 
Plaintiffs argue that Defendants waived their sovereign immunity by placing the affirmative
defense of release as Point I in their motion to dismiss and relegating their sovereign immunity
defense to Point II.  Plaintiffs have proffered no authority for the proposition that a defendant
should be deemed to have waived sovereign immunity – a result that would require a finding of
conduct that "unequivocally evidence[s] the state's intention to subject itself to the jurisdiction of
the federal court," Hill v. Blind Indus. & Servs., 179 F.3d 754, 758 (9th Cir. 2002) (citing
Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985)) – merely on the basis of the order in
which the defendant presented its arguments in a brief.  As "the Supreme Court and [the Second
Circuit] have repeatedly held that a state may assert Eleventh Amendment sovereign immunity at
any time during the course of proceedings," McGinty v. New York, 251 F.3d 84, 94 (2d Cir. 2001),
Defendants can certainly raise sovereign immunity at any point within their motion papers.

Plaintiffs also argue that Defendants' statement that Plaintiffs' claims "could have
been asserted" in Wang I constitutes a waiver.  This argument similarly fails to identify the

necessary "unequivocal[] evidence [of] the state's intention to subject itself to the jurisdiction of the federal court." See Hill, 179 F.3d at 758. Defendants' statement merely implies that the facts at issue in this case were known to Plaintiffs when they entered into the Stipulation that concluded the previous federal action. The statement in no way suggests that, had Plaintiffs asserted the instant claims in the earlier action, Defendants would have declined to avail themselves of their Eleventh Amendment shield.

Finally, in footnote ten of their Opposition, Plaintiffs argue that, after a "fundamental re-examination of the relationship between the Eleventh Amendment and New York law," the Court should find that New York State's waiver of immunity provided in the Court of Claims Act, N.Y. Court of Claims Act § 8, extends beyond the limited jurisdiction of the Court of Claims. Plaintiffs have proffered no legal analysis demonstrating that such re-examination is warranted and, as the "test for determining whether a state has waived its [Eleventh Amendment] immunity from federal court jurisdiction is a stringent one," Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985), the Court finds no merit in this third contention.

Accordingly, all of Plaintiffs' federal and state law claims asserted against the State of New York and against defendants named in their official capacities are dismissed.

The only claims that are not barred by the Eleventh Amendment are Plaintiffs' claims against the four individual defendants (Daniels, Milano, Stuart, and Clark) in their individual capacities.[6] The Court considers next whether these claims are precluded by the

---

[6] These claims, all asserted against Daniels, Milano, Stuart, and Clark in their individual capacities, are: Federal Claim, Count I (§ 1983 - Selective Treatment) (Am. Compl. ¶¶ 130-48); Federal Claim, Count II (§ 1983 - Retaliation for Exercise of Free Speech) (Am. Compl. ¶¶ 149-60); Federal Claim, Count III (§ 1983 - Substantive Due Process) (Am. Compl. ¶¶ 161-67); Federal Claim, Count IV (§ 1983 - Procedural Due Process) (Am. Compl. ¶¶ 168-78); and State Claim, Count II (Civil

Stipulation entered into in Wang I.

The Wang I Release

The first four pages of the Stipulation recite the history of license applications, license suspensions, administrative proceedings, and federal court proceedings that the parties engaged in through June 2006.[7] The Stipulation's release provision, at paragraph 11, states:

> Whereas the parties are mutually desirous of resolving all issues pertaining to the above-captioned action and Wang's application for AIV and real estate broker's licenses . . . the parties hereby release and discharge each other and any of their current, former, or future officials, officers, employees, heirs, devisees, agents, or other representatives or successors-in-interest of plaintiffs and the State of New York and/ or its agencies from any and all claims, liabilities, causes of action, or defenses that any party asserted, or could have asserted, in this action.

(Polishook Decl., Exh. C, ¶ 11.)

The Stipulation includes only two express exceptions to this broadly-written provision: paragraph 9 authorizes the relevant New York State actors to bring administrative proceedings against the Plaintiffs if they receive any complaints about them subsequent to the execution of the Stipulation (id. ¶ 9), and paragraph 10 authorizes Plaintiffs to raise any defenses available to them in the event of such a proceeding (id. ¶ 10). The Stipulation further provides that it constitutes the entire and complete understanding of the parties (id. ¶ 17) and can only be amended or

---

Malicious Prosecution "II") (Am. Compl. ¶¶ 191-99).

[7] Defendants' inclusion of a copy of the Stipulation and the complaints filed in Wang I in their moving papers does not convert their motion for dismissal pursuant to Rule 12(b)(6) into a motion for summary judgment pursuant to Rule 56. The Court may properly take judicial notice of public documents filed in an official proceeding in considering a motion to dismiss. Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"); Candelaria v. Erickson, No. 01 Civ. 8594, 2007 WL 1793443, at *2 (S.D.N.Y. June 18, 2007).

modified by written agreement executed by all parties (id. ¶ 18).

Plaintiffs do not dispute the existence or the validity of the stipulation. Rather, they argue that the instant dispute is outside of its scope because the parties intended its reach to be coextensive with that of the doctrine of *res judicata*, and because the claims in the instant litigation are different from those in Wang I in four respects. Neither argument is sufficient to overcome the preclusive effect of the Stipulation on the instant litigation.

"It is well established that settlement agreements and general releases are contracts construed according to general principles of contract law." Collins v. Harrison-Bode, 303 F.3d 429, 433 (2d Cir. 2002) (internal citations and quotation marks omitted). "Where the language of the release is clear, effect must be given to the intent of the parties as indicated by the language employed." Shklovskiy v. Khan, 273 A.D. 2d 371, 372 (2d Dep't 2000). Although Plaintiffs have proffered affidavits as to the parties' intent in entering into the stipulation, no resort to such extrinsic evidence is necessary or authorized, because the release provision is unambiguous: it precludes any claim that a party could have asserted in the context of the federal court litigation that the Stipulation concluded. Accordingly, the dismissal motion must be granted to the extent Plaintiffs assert such claims here. See Brodeur v. City of New York, No. 04 Civ. 1859, 2005 WL 1139908 (E.D.N.Y. May 13, 2005) (granting defendant's motion for judgment on the pleadings because the settlement agreement from a prior action precluded plaintiff's claims).

Plaintiffs argue that the preclusive effect of the Stipulation is limited to a release of claims that are precluded by the legal doctrine of *res judicata*, or "claim preclusion."[8] Their

---

[8] Because "[t]he doctrine of *res judicata* applies with equal force to a judgment entered approving a stipulation of settlement as to a judgment on the merits entered after a trial or a dispositive motion," Lerner v. Reserve Mgmt Co., No. 08 Civ. 1238, 1981 WL 1641, at * 2 (S.D.N.Y June 17, 1981) (citing Transcontinental Oil Corp. v.

argument, lacking any citation to legal authority, rests on the similarity between the language of the release provision and the language often employed by courts discussing *res judicata*.[9]  However, "federal decisions [] use a wide variety of phrases and formulas in the attempt to describe the general scope of claim preclusion," Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4407.  The mere similarity between a portion of the release provision and a common judicial formulation of *res judicata* does not compel the Court to interpret the release provision as co-extensive with *res judicata*.  The Court must interpret the release provision within the context of the Stipulation.[10]  The Stipulation's extensive recitation of the parties' dispute includes facts that occurred after Plaintiffs' filed their amended complaint in Wang I, demonstrating the parties' intention to preclude claims based on those facts, irrespective of whether they would be precluded by *res judicata*.  Furthermore, the release provision itself expressly extends its preclusive

---

Trenton Products Co., 560 F.2d 94, 107-08 (2d Cir. 1977)), Plaintiffs' interpretation would render the release provision redundant.  Under New York law, "in construing a contract, one of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless." Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assoc., 63 N.Y.2d 396, 403 (N.Y. 1984).

[9]  Compare Polishook Decl., Exh. C, ¶ 11 ("the parties hereby release and discharge each other and any of their current, former, or future officials, officers, employees, heirs, devisees, agents, or other representatives or successors-in-interest of plaintiffs and the State of New York and/ or its agencies from any and all claims, liabilities, causes of action, or defenses that any party asserted, or could have asserted, in this action"), with Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997) ("Under both New York law and federal law, the doctrine of *res judicata*, or claim preclusion, provides that [a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action") (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)).

[10]  See Krumme v. WestPoint Stevens, Inc., 238 F.3d 133, 139 (2d Cir. 2000) (stating that under New York contract law courts interpret contractual language within the context of the entire agreement); Barone v. Marone, No. 04 Civ. 2001, 2007 WL 4458118, at *4 (S.D.N.Y. Dec. 14, 2007) (interpreting terms of a release provision by considering them within the context of the entire agreement).

effect to a long list of persons and entities, irrespective of whether those persons and entities would fall within claim preclusion's privity limitation.[11]  Accordingly, the Court concludes that the Stipulation unambiguously reflects the parties' intention to preclude a wide class of potential claims and litigants without reference to the contours of *res judicata*.[12]

Plaintiffs point to four differences between the instant litigation and Wang I to argue that the Stipulation does not preclude the claims asserted here.  The cited differences do not defeat the Stipulation's preclusion of the instant litigation, however, because the Stipulation does not merely preclude Plaintiffs from asserting claims identical to those in Wang I.  Rather, as explained above, it precludes Plaintiffs from asserting "any and all claims, liabilities, causes of action, or defenses that any party asserted, or could have asserted, in this action."  The relevant inquiry is therefore whether the claims asserted here are ones that *could have been asserted* in the course of Wang I.  As the Court will explain, none of the four differences relied upon by Plaintiffs establishes that the claims in the instant case could not have been asserted in Wang I.

Plaintiffs assert that the claims in the instant case did not arise out of the same transaction as the claims in Wang I: they argue that Wang I sought a declaration that the AIV statute was unconstitutional, whereas the instant claims are premised on Defendants' allegedly retaliatory actions against Plaintiffs for instigating Wang I.  Therefore, Plaintiffs argue, they would not have been permitted to join these claims to Wang I.  Rule 15(d) of the Federal Rules of Civil Procedure permits plaintiffs to amend their complaints to set forth in a supplemental pleading new claims or new parties based upon factual circumstances that have arisen since the filing of the complaint, as

---

[11]  See, e.g., Maharaj, 128 F.3d at 97.

[12]  The Court need not, and accordingly does not, decide whether the instant claims would be precluded by *res judicata*.

long as they are "adequately related to the originally stated claims."  Harris v. Morton, No. 05 Civ.

1049, 2007 WL 2365994, at * 1 (N.D.N.Y. Aug. 16, 2007) (internal citations and quotation marks

omitted).  The instant claims are adequately related to those asserted in Wang I.  Plaintiffs allege

three principal retaliatory acts in the Amended Complaint: the suspension of Plaintiffs' REB license;

the denial of Plaintiffs' application for an AIV license; and the refusal to reinstate Plaintiffs' REB

license (Am. Compl. ¶ 52).  The suspension of the REB license and the denial of the application for

an AIV license were already alleged in Plaintiff's Wang I amended complaint (Polishook Decl., Ex.

B, 10), and the refusal to reinstate the REB license unquestionably is factually connected to the

original suspension of it.  As "leave to file a supplemental pleading should be freely permitted when

the supplemental facts connect it to the original pleading," Quaratino v. Tiffany & Co, 71 F.3d 58, 66

(2d Cir. 1985), Plaintiffs could have supplemented their amended complaint in Wang I to include the

instant claims and the predicate facts that were not already pleaded.

The cases cited by Plaintiffs are distinguishable in that the retaliatory acts in question

were predicated on facts wholly distinct from the plaintiffs' original claims, linked only by plaintiffs'

conclusory assertion of retaliation.  Cf. Smith v. Goord, No. 04 Civ. 6432, 2007 WL 496371, at *1

(W.D.N.Y. Feb. 12, 2007) (denying plaintiff's motion to amend complaint to add new claims that did

not "give[] rise to any question of law or fact" implicated in the original claims), McLean v. Skully,

No. 90 Civ. 2590, 1991 WL 274327, at *1 (S.D.N.Y. Dec. 9. 1991) (denying plaintiff's motion to

amend complaint to add claims that "represent[ed] an entirely separate incident" and that only were

related to the original claim by plaintiff's "conclusory allegation" that the incident was motivated by

the filing of the original action).  The considerable overlap between the operative facts alleged in

Wang I and those alleged in the instant case compels the rejection of Plaintiffs' argument that the

rules of supplemental pleading would have prevented Plaintiffs from asserting these claims in Wang

I. See Waksman v. Cohen, No. 00 Civ. 9005, 2002 WL 31466417, at * 12 (S.D.N.Y. Nov. 4, 2004) (holding that plaintiff's claims were precluded by a settlement that released all claims that "could have been raised" in a previous litigation, because they "ultimately stem[med] from the same transaction" as the previous litigation and their operative facts occurred while the previous litigation was still pending).

Plaintiffs' second argument is that the instant claims could not have been asserted in Wang I because they did not accrue until September 18, 2006 (the date that Plaintiffs received the REB license) – a few months after the execution of the Stipulation. However, the complaint establishes that the claims accrued before the execution of the Stipulation on June 30, 2006.[13] "Generally, a claim accrues when the act complained of or injury occurs." Goddard v. New York, 173 Misc. 2d 1002, 1005 (N.Y. Ct. Cl. 1997) (internal citations and quotation marks omitted). In the Section 1983 context, "federal law . . establishes as the time of accrual that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." Singleton v. New York, 632 F.2d 185, 191 (2d Cir. 1980). The acts complained of that form the core of each of the instant claims are that Defendants allegedly "suspended Plaintiffs' REB license, continuously denied their application for an AIV license, overzealously appealed decisions awarding them an AIV license, and continuously blocked their attempts to obtain an AIV license and reinstate their REB license." (Am. Compl. ¶ 132.) According to the amended complaint, these acts occurred in or about February 1999 (¶ 51), July 1999 (¶ 58), January 2000 (¶ 64), January 2001 (¶ 73), November 2002 (¶ 69), Fall 2003 (¶¶ 84-86), January 2004 (¶ 89), February 2004 (¶ 90), March 2004 (¶ 94), October -

---

[13] The date of the Stipulation's execution, rather than the date of the filing of either the complaint or the amended complaint, is the operative date for this analysis because, as explained above, Plaintiffs could have sought to amend their complaint in Wang I at any time before the execution of the Stipulation to include additional factual developments related to the same transaction or series of transactions already alleged.

December 2004 (¶¶ 101-02), January 2005 (¶ 109), May 2005 (¶ 110), January 2006 (¶ 112), and at an unspecified time between March 2006 and June 16, 2006 (¶¶ 123-24).  The amended complaint thus reveals that, at the time Plaintiffs executed the Stipulation, the acts complained of in the instant claims had already occurred, and Plaintiffs were already aware of the injuries that are the basis of the instant claims.  Accordingly, Plaintiffs' argument that the claims are not precluded by Wang I because they had not accrued fails as a matter of law.

        Plaintiffs' third argument is that the claims they assert here against the defendants named in their individual capacities cannot be precluded by the Stipulation because those defendants could not have been joined in the prior action under Rule 20.  The plain language of the Stipulation compels the rejection of this argument: the Stipulation releases "any of [the parties'] current, former, or future officials, officers, employees, heirs, devisees, agents, or other representatives or successors-in-interest of plaintiffs and the State of New York and/ or its agencies from any and all claims, liabilities, causes of action, or defenses that any party asserted, or could have asserted, in this action."  (Polishook Decl., Exh. C, ¶ 11.)  Stated another way, Defendants Daniels, Milano, Stuart, and Clark, as current or former officials, officers, or employees of the State of New York or its agencies, may not be sued by Plaintiffs for any claims they could have asserted in Wang I.[14]  The Court has concluded that the instant claims could have been brought in Wang I.  Because those claims are premised on actions allegedly taken by these individuals, the language of the Stipulation clearly extends protection to these individuals as well.  Furthermore, as the instant claims arise out of the "same transaction, occurrence or series of transactions or occurrences" as those in Wang I, Defendants named in their individual capacities in the instant case could have been joined in Wang I

---

[14]    The legal term "claim" is not defendant-specific.  Black's Law Dictionary (8th ed. 2004).

under Rule 20.  Fed. R. Civ. P. 20; see Barnhart v. Town of Parma, 252 F.R.D. 156, 158-60 (N.D.N.Y. 2008) ("courts have interpreted the requirements of Rule 20(a) liberally to promote judicial economy and to allow related claims to be tried within a single proceeding"; "[c]ourts within this Circuit repeatedly have interpreted the phrase 'same transaction' to encompass all logically related claims").

Plaintiffs' fourth argument is that the instant claims could not have been brought in Wang I because "they sought different relief."  (Pl. Opp. 15.)  Plaintiffs' lengthy discussion of the rules governing permissible remedies in various New York state proceedings has no bearing on whether Plaintiffs could have raised the instant claims in federal court in Wang I.  Because federal court plaintiffs are permitted to seek different remedies in one action, this argument fails.

In sum, Plaintiffs' claims against Defendants named in their individual capacities are precluded by the Stipulation.

### Attorneys' Fees

Defendants have requested that the Court exercise its discretion under 42 U.S.C. § 1988 to order Plaintiffs to pay their attorneys' fees.  The Supreme Court has held that victorious defendants should receive attorneys' fees under this statute only when the plaintiff's claim was "frivolous, unreasonable, or groundless," or when "the plaintiff continued to litigate after it clearly became so."  Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978).  Attorneys' fees may only be awarded under this statute against a party; they may not be awarded against the party's counsel.  Oliveri v. Thompson, 803 F.2d 1265, 1272-73 (2d Cir. 1986).  Plaintiffs have not engaged in the type of dishonest representations to the Court that typify the instances in which courts have exercised their discretion to award attorneys' fees under § 1988.  Cf. Puglisi v. Underhill Park

Taxpayer Ass'n, 964 F. Supp. 811, 815 (S.D.N.Y. 1997) (assessing attorneys' fees against a plaintiff who had alleged facts in his complaint that he subsequently admitted were false). Nor does the Court find that the claims and arguments advanced by Plaintiffs were so frivolous, unreasonable or groundless as to warrant a fee award to Defendants. The Court therefore elects not to exercise its discretionary authority to order Plaintiffs to pay Defendants' attorneys' fees.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss the amended complaint on grounds of Eleventh Amendment sovereign immunity with respect to the State of New York and all Defendants named in their official capacities. As to the remaining Defendants, the Court grants the motion to dismiss Plaintiffs' federal § 1983 claims and their state law civil malicious prosecution claim on the grounds that the claims are entirely precluded by the Stipulation. The Court denies Defendants' request for an award of attorneys' fees under 42 U.S.C. § 1988.

This Opinion and Order resolves docket entry no. 21. In light of the granting of this motion, the pre-trial conference scheduled for December 19, 2008 is cancelled. The Clerk of the Court is respectfully requested to enter judgment dismissing Plaintiffs' claims against the State of New York and against Defendants sued in their official capacity for lack of subject matter jurisdiction and dismissing the remainder of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. The Clerk of the Court is further requested to close this case.

SO ORDERED.

Dated: New York, New York
       December 18 , 2008

LAURA TAYLOR SWAIN
United States District Judge